CHRIS T. BARNETTE, Judge Pro Tem.
Plaintiff brought suit for damages for illegal seizure and sale of his property, to wit, two dump trucks which he claims were tools of his trade and, as such, exempt from seizure and sale. An exception of no cause or right of action and a plea of res judicata were filed. The exception, of no cause or right of action was maintained and plaintiff’s suit dismissed. From the judgment dismissing his suit, plaintiff has appealed.
The defendant brought suit against this plaintiff in the First City Court of New *496 Orleans and obtained a judgment of $213.-22, interest and attorney’s fees, and thereafter caused a writ of fieri facias to issue, and in due course the trucks in question were seized and advertised for sale by the constable of thát court. The plaintiff here, who was defendant in that case, filed a rule to set the seizure aside claiming that the trucks were tools of his trade and exempt from seizure and sought to have them released with reservation of right to sue for damages. After a trial on the merits, the rule was dismissed and judgment rendered for Atlas Finance Company, defendant in the rule, plaintiff in the original action. From that judgment, Rouseo appealed devolutively to this Court, and while the appeal was pending, the trucks were sold in execution of the judgment of the First City Court. This Court held that the issue was moot when heard in this Court, and there was no relief which this Court could then grant to the appellant and dismissed the appeal. Atlas Finance Corporation v. Rouseo, La.App., 155 So.2d 207.
Rouseo then filed suit in the Civil District Court for the Parish of Orleans against Atlas Finance Company, Inc., for damages on account of the alleged unlawful seizure and sale of his trucks. The exception of no cause or right of action was maintained which made it unnecessary for the Court to pass 'on the plea of res judi-cata.
The defendant-appellee in its brief, both in the District Court and here, relied principally on the authority of Bomarito v. Max Barnett Furniture Co., 177 La. 1010, 150 So. 2. We do not have the benefit of written reasons for the judgment maintaining the exception of no cause or right of action and assume that the District Court followed the Bomarito case.
It is our opinion that the Bomarito case is clearly distinguishable from the instant case and that the principle of law there involved is not applicable here. That case was before the Court of Appeal (Orleans) on different issues three times and before the Supreme Court once. A résumé of the litigation is given in Max Barnett Furniture Co. v. Bomarito, La.App., 157 So. 564. Stripped of all collateral issues, that case was simply one where the original plaintiff Barnett Furniture Co. obtained a judgment against Mrs. Bomarito by default on a note given in payment for purchase of furniture. A devolutive appeal was taken, and while it was pending, the plaintiff caused a writ of fieri facias to issue and executed the judgment by the seizure and sale of the furniture. On appeal the default judgment was reversed on the ground that insufficient evidence was filed to sustain judgment, and the case was remanded to the Civil District Court for further proceedings according to law. Max Barnett Furniture Co. v. Bomarito, 15 La. App. 244, 130 So. 883. Mrs. Bomarito then brought suit against the furniture company for damages on account of the seizure and sale of her furniture “under an illegal judgment” secured against her by the fufniture company in the original suit. The court held that there was nothing illegal about the judgment-upon which her furniture was seized and sold, and that since her appeal was not suspensive, the execution of the judgment was legal and proper, citing Article 578 of the Louisiana Code of Practice which provided that a devolutive appeal does not stay the execution of judgment. Her only remedy after reversal of the judgment was the return of such amount as the plaintiff received as a result of the sale.
The principle held in Bomarito v. Barnett Furniture Company was restated by the Supreme Court in State v. Mutual Inv. Co., 214 La. 356, 37 So.2d 817, in the following language: “ * * * This doctrine is particularly applicable to devolu-tive appeals perfected from judgments under which sales have been consummated. In such cases the validity of the sales, made in execution of the judgments after they became executory, could not be affected by the subsequent reversal of the judgments on the appeals. [Citing several cases]”. These cases were decided under Ar- *497 tide 578 of the 1870 Code of Practice. LSA-C.C.P. art. 2252 contains substantially the same provision. Comments under that article state further that Articles 2087 and 2124 “furnish adequate basis for the retention of the above jurisprudential rule, although no provision similar to Art. 578, Code of Practice of 1870, has been included in this Code.”
We fully subscribe to the judgment in the Bomarito case and the above authorities, but hold that they are not controlling here because there is no complaint of the execution of judgment obtained by Atlas Finance Company against this plaintiff. There has been no attack on the validity of the judgment, as in the Bomarito case, aiid there was no appeal from it. The question here is not the execution of the judgment per se, but whether it was executed illegally by seizure and sale of property not subject to execution. There is a clear distinction between these questions. The judgment of the trial court maintaining the exception of no cause or right of action and dismissing plaintiff’s suit on that basis must therefore be reversed.
This brings us to what we consider to be the more serious issue, the plea of res judicata.
Plaintiff in this suit was defendant in the original suit in which the present defendant obtained judgment against him in the First City Court of New Orleans. In that proceeding Rouseo attempted by rule to have the seizure of his trucks set aside on the ground that they were tools of his trade and, as such, exempt from seizure as above stated. His appeal from the adverse judgment of the City Court on the rule was devolutive and the issue declared moot when it reached this Court. This adverse judgment of the City Court forms the basis of the plea of res judicata.
Res judicata is controlled by LSA-C.C. art. 2286 which reads as follows:
“The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.”
In construing this article, our courts have held to the requirement of strict application as reflected in the following statements:
“As contended by appellants and acknowledged by appellees it is settled law in this state that a plea of res ad judicata is stricti juris and each element thereof must be established beyond all question. * * * ” Terrebonne v. Arabie, La.App., 132 So.2d 106.
“This court has repeatedly and consistently held that the exception or plea of res judicata cannot be sustained unless each of the three essentials prescribed by the Code is found present. The rule or formula laid down by the Code is stricti juris and must in all cases be adhered to. The reason clearly appears. A departure from the rule might easily result in serious hurt and injustice to one of the litigants.” Lloveras v. Reichert, 197 La. 49, 200 So. 817.
Applying the Codal article and the above-cited rules, and numerous other cases holding to the same interpretation of the article, to the facts of this case, we see at once that one of the necessary elements of res judicata is not present in this case. In the original suit between these parties, the relief prayed for was an injunction to stop the seizure and sale of the property in question. In this suit, the relief prayed for is damages for a wrongful seizure. The thing demanded in the two suits is not the same and the plea of res judicata must fall.
*498 The case of Quarles v. Lewis, 226 La. 76, 75 So.2d 14, while differing in one material aspect, is pertinent to the question presented here. In that case the Supreme Court held that a vendor who procured specific performance of a contract for the sale of realty was not barred by res judicata from thereafter maintaining a separate suit to recover damages resulting from delay in performance. In that case the plaintiff prevailed in his initial suit (specific performance) while here the plaintiff was unsuccessful in his action to enjoin the seizure and sale, but the principle of law applied to the plea of res judicata is the same.
The Court said in the Quarles case:
“ * * * Since the object of the first suit was to compel a specific performance whereas this suit is for recovery of damages resulting from untimely performance, it is clear that the demand in this suit is not the same as that in the first action, even if it be conceded that defendant’s breach of contract gave rise to but one cause of action (which counsel for plaintiff strenuously deny). Accordingly, it would seem to follow that the plea of res adjudicata is not well taken unless it be, as defendant professes, that the judgment in the first suit is conclusive not only of the issue there presented but also of all matters which might have been pleaded therein — a concept of res adjudicata having its origin in the common law."
“But, as stated in Woodcock v. Baldwin, 110 La. 270, 34 So. 440, 441, citing the leading case of State v. American Sugar Refining Co., 108 La. 603, 32 So. 965:
“ ‘The doctrine of the common law courts that res adjudicata includes not only everything pleaded in a cause but even that which might have been pleaded, does not generally obtain under our system.’ ” (Citing many authorities)
In California Company v. Price, 234 La. 338, 99 So.2d 743, sometimes referred to as the second Price case, the majority opinion stated:
“Moreover, even if res judicata cannot be strictly applied the parties to this litigation are bound by judicial estoppel which extends to every material allegation or statement made on one side in the prior Price case and denied on the other which was determined in the course of the proceedings. [Citing among other cases, Quarles v. Lewis, supra],
“The State seems to be under the impression that the common law doctrine of judicial estoppel is not recognized in this State but the cases herein referred to have recognized and applied that doctrine. The State is under the impression that the cases of Buillard v. Davis, supra [185 La. 255, 169 So. 78], and Heroman v. Louisiana Institute, supra [34 La.Ann. 805], were expressly overruled in the Quarles case. They rely on a footnote in the Quarles decision which they say overrules the above referred to cases. It is stated in the footnote that these cases appear to be out of line with the rest of the jurisprudence but it was never the intention of this Court to overrule those cases. In fact, the doctrine of judicial estoppel was specifically recognized in the Quarles case.”
We have read the decision in the Quarles case very carefully to find the basis for the last above-quoted sentence. The most we can make out of it is that references there made to other cases indicate a limited application of res judicata on the principle embodied in the common law doctrine of judicial estoppel. Be that as it may, judicial estoppel has not been pleaded here, nor do we think it would be applicable if it were. The common law doctrine of collateral estoppel would be more nearly applicable, but we are strongly opposed to adoption of such foreign doc *499 trines which serve only to confuse the civil law of this State which, on the subject of res judicata, is clear and unequivocal. Collateral estoppel is more fully discussed by us in Shell Oil Company v. Texas Gas Transmission Corp., No. 1355 on the docket of this Court, in opinion this day filed. The answer to the question we must decide is found in the articles of the Civil Code of Louisiana, and there is no need for our confusing Idle issue with a common law doctrine.
The Supreme Court in State v. American Sugar Refining Co., 108 La. 603, 32 Sq. 965, reviewed the principle of res judicata and in an able discourse on its origin and development in civil law said in part:
“The basic principle of res judicata is found in the necessity that a time should come when the litigation shall cease, in order that the decree of the court may be carried out. This is what the law concerns itself with, that the object of the judgment shall not remain eternally in suspense, but be delivered into the quiet and undisturbed possession of the successful litigant. This is what the Code means when it says that ‘The authority of the thing adjudged takes place only with respect to what was the object of the judgment.’ The law by virtue of which the object of the judgment is delivered is no part of the object of the judgment. It is only one of the reasons for judgment, and res judicata does not take place with respect to the reasons for judgment, but ‘only with respect to what was the object of the judgment.’ Res judicata deals, if we may so express ourselves, with the decree of the court, as contradistinguished from the judgment of the court. * * * ”
Mr. Justice Simon, dissenting in California v. Price, supra, said, and we quote with approval:
“It is well settled that ■ the reasons assigned by a court and which influence the ultimate decree do not form part of the decree. It is the decree only that may be set up as res judicata. The opinion of a court is but an exposition of the motives upon which its decree is based. State ex rel. Puritan Co., Ltd. v. City of New Orleans, 169 La. 365, 125 So. 273.”
Whatever reasons therefore which might have formed the basis of the opinion of the City Court in refusing the injunctive-relief sought do not form any part of the decree. The decree of that court was not on the same demand as that presented in this case, and at least to that extent the essential requirements for the application of res judicata are not fulfilled.
For these reasons the judgment of the District Court is reversed and the case is remanded for further proceedings according to law. The defendant-appellee is cast for costs of this appeal.
Reversed and remanded.